IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| VALORIE CARGILE-JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.:  2:14-cv-1149-WC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

## I.     INTRODUCTION

Valorie Cargile-Johnson ("Plaintiff") filed an application for supplemental security income under Title XVI of the Act, 42 U.S.C. § 1381, *et seq.*, on May 11, 2012. Her application was denied at the initial administrative level.  Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ issued a decision finding Plaintiff not disabled from the amended alleged onset date of May 11, 2012, through the date of the decision.  Plaintiff appealed to the Appeals Council, which rejected her request for review of the ALJ's decision.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case

---

[1]     Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

is now before the court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. 9); Def.'s Consent to Jurisdiction (Doc. 10).  Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative

---

[2]    A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4.  At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  *Id*. at 1238-39.  The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Id*.  It may contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert ("VE").  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a

---

[3]   *McDaniel* is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4]   *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

statutorily-required finding of "Disabled" or "Not Disabled."  *Id.*

The court's review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.").  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.  . . .  No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff, who was forty-seven years old on the amended alleged disability onset date, has a tenth-grade education.  Tr. 35.  Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since May 11, 2012, the amended alleged onset

4

date[.]"  Tr. 16.  At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments:  "Hepatitis C; systemic lupus erythematosus (SLE); degenerative joint disease of the shoulders; history of plantar fasciitis; history of asthma; fibromyalgia; osteoarthritis of the right knee; and obesity[.]"  *Id.*  At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]"  Tr. 18.  Next, the ALJ articulated Plaintiff's RFC as follows:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that she can occasionally lift/carry (including upward pulling) up to 10 pounds and frequently lift/carry (including upward pulling) less than 10 pounds; she can stand and/or walk (with normal breaks) for a total of about 6 hours in an 8 hour workday she is limited to frequent bilateral pushing/pulling (including operation of hand and/or foot controls) in the upper and lower extremities; she can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; she can frequently balance; she can occasionally crouch and stoop; she can never kneel or crawl; she is limited to frequent bilateral reaching (overhead and all directions); she has no visual, or communicative limitations; she must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, and vibration; she must avoid moderate exposure to fumes, odors, dusts, gases, and poor ventilation; and she must avoid all exposure to dangerous machinery or unprotected heights.

*Id.*  Having consulted with a VE at the hearing, the ALJ concluded at Step Four that Plaintiff "has no past relevant work[.]"  Tr. 23.  Finally, at Step Five, and relying upon the testimony of the VE, the ALJ determined that "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform[.]"  Tr. 24.  Accordingly, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social

Security Act, since May 11, 2012, the date the application was filed, with the amended alleged onset date being the same[.]"  Tr. 25.

## IV.   PLAINTIFF'S CLAIMS

Plaintiff presents four issues for this court's consideration in review of the ALJ's decision:  (1) whether the ALJ's RFC was supported by substantial evidence; (2) whether the ALJ erred in finding the Plaintiff is able to reach up to two-thirds of the workday; (3) whether the ALJ erred by finding Plaintiff did not suffer from a severe mental impairment; and (4) whether the ALJ properly considered the combined impact of Plaintiff's impairments.  Pl.'s Br. (Doc. 12) at 1.

## V.   DISCUSSION

### A.   Whether the ALJ's RFC was supported by substantial evidence

Plaintiff first argues that the ALJ failed to properly evaluate Plaintiff's RCF. Plaintiff argues that an RFC "'must be based on all of the relevant evidence in the case record,'" Pl.'s Br. (Doc. 12) at 6 (quoting SSR 96-8p), "requires a sufficient summary of the medical evidence[,] and should not be 'a conclusory, categorical RFC Assessment' or a 'broad statement.'"  Pl.'s Br. (Doc. 12) at 6-7 (quoting *Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1374 (N.D. Ga. 2006)).  Plaintiff asserts that the ALJ only "offered a 'broad statement'" in support of the RFC determination.  Pl.'s Br. (Doc. 12) at 7.  It appears that Plaintiff takes specific issue with the following statement made by the ALJ:

> [Plaintiff] has a combination of impairments that could reasonably reduce her ability to function within the limitations otherwise set forth at Hypothetical #2 used as the RFC in this case[.]  Mild to moderate pain at times versus severe pain appears reasonable during the period at issue and such has been factored into the RFC at Hypothetical #2.

Tr. 20.   Plaintiff asserts that statement was too broad and insufficient to properly summarize the medical evidence and evaluate Plaintiff's RFC.  Pl.'s Br. (Doc. 12) at 6-7.

Plaintiff is incorrect.  In this case, the ALJ spent more than five pages of the decision discussing and citing the medical evidence in the record pertaining to the relevant time period, reviewing Plaintiff's testimony, making credibility determinations, and otherwise explaining the reasoning for the RFC assessment.  *See* Tr. 18-23.

The only specific piece of evidence Plaintiff identifies as having not been discussed by the ALJ is a report created by Ms. Julie M. Evans, a State Agency Single Decision Maker (SDM).  Pl.'s Br. (Doc. 12) at 7.  According to Plaintiff, Ms. Evans "found [Plaintiff] was limited to a reduced range of light work with an important limitation:  [Plaintiff]'s Overhead Reaching was limited to 'Occasionally.'"  *Id.*  Plaintiff claims that the ALJ was required to consider and evaluate Ms. Evans's report and erred by not doing so.  *Id.*

The court does not agree.  The ALJ was not required to consider or give any specific weight to the opinion of the SDM.  In fact, had the ALJ relied on the SDM's opinion, such reliance would have been error.  *See Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 871 (11th Cir. 2012) ("Indeed, the SSA's Program Operations Manual System ("POMS") explicitly distinguishes RFC assessments produced by an SDM from those produced by a medical consultant, and states that 'SDM-completed forms are not opinion evidence at the appeals level.'").  *See also Miller v. Astrue*, No. 1:10CV1028-WC, 2012 WL 174589, at *3 (M.D. Ala. Jan. 23, 2012) ("The court agrees with the

parties that the ALJ's reliance on the SDM's opinion was indeed error."); *Casey v. Astrue*, 2008 WL 2509030, at *4 n.3 (S.D. Ala. June 19, 2008) ("[A]n RFC assessment completed by a disability specialist is entitled to no weight."); *Velasquez v. Astrue*, 2008 WL 791950, at *3 (D. Colo. Mar. 20, 2008) (Opinion of SDM is "entitled to no weight as a medical opinion, nor to consideration as evidence from other non-medical sources."); *Bolton v. Astrue*, 2008 WL 2038513, at *4 (M.D. Fla. May 12, 2008) ("'An SDM is not a medical professional of any stripe, and' a finding from such an individual is 'entitled to no weight as a medical opinion, nor to consideration as evidence from other non-medical sources.'").

To the extent Plaintiff argues that the ALJ should have relied on the opinion of Ms. Evans because she authored "[t]he only functional opinion in the record," Plaintiff is again incorrect. It is not a physician or SDM but the ALJ who is charged with formulating the RFC at the administrative hearing level. 20 C.F.R. § 416.946(c). The ALJ must assess a claimant's RFC "based on all of the relevant medical and other evidence[,]" and, in general, the claimant will be responsible for providing the evidence used to make a finding about the RFC. § 416.945(a)(3). An ALJ's RFC assessment may be supported by substantial evidence, even in the absence of any examining medical source opinion addressing Plaintiff's functional capacity. *See, e.g.*, *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007) (unpublished opinion) (finding the ALJ's RFC assessment supported by substantial evidence where he rejected treating physician's opinion properly and formulated the plaintiff's RFC based on treatment records, without a physical capacities evaluation by any physician); *see also Dailey v. Astrue*, 2012 WL

3206482, at *9 (S.D. Ala. July 18, 2012) ("[A]n ALJ may reach an RFC determination in appropriate circumstances on a record that does not include an RFC opinion from a treating or examining medical source."). The RFC was supported by substantial evidence and Plaintiff has not established any error by the ALJ.

**B.    Whether the ALJ erred in finding the Plaintiff is able to reach up to two-thirds of the workday**

Next, Plaintiff argues that the ALJ erred by finding that Plaintiff was capable of frequently, meaning one-third to two-thirds of the workday, using her upper extremities for reaching. Pl.'s Br. (Doc. 12) at 8. Plaintiff asserts that because "[Plaintiff] is right handed . . . and has an unrepaired torn right rotator cuff," her "ability to use her upper extremities is more limited than found by the ALJ." *Id.* Plaintiff argues that Dr. Stuart May, M.D., examined Plaintiff in 2011 and noted Plaintiff suffered from a right shoulder rotator cuff tear, and that Ms. Evans, SDM, also found Plaintiff's ability to reach more limited than the ALJ. *Id.* at 9.

However, as Plaintiff also notes, the ALJ discussed with the VE the implications of additional reaching limitations. Pl.'s Br. (Doc. 12) at 9; Tr. 50-51. The VE testified that an individual limited in a manner consistent with the RFC, but with the additional limitation that bilateral upper extremity reaching be limited to "occasional" instead of "frequent," would be capable of performing work as a call out operator or a child attendant. Tr. 51. The VE testified that a call out operator, DOT number 237.367-014, encompasses 670 jobs in Alabama and 66,000 in the national economy and a child

attendant, DOT number 349.677-018, encompasses 620 jobs in Alabama and 111,000 in the national economy.  Tr. 51-52.

> Once the claimant proves that she cannot return to her past relevant work, the burden shifts to the Commissioner to show that the claimant can perform other jobs that are significant in number in the national economy, considering age, education, and work experience.  The burden is on the ALJ to provide evidence about the existence of other work in the national economy that a claimant can perform.  The ALJ may satisfy this burden and provide this evidence through a VE's testimony.  In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. Further, the ALJ must articulate specific jobs that exist in national economy that a claimant can perform.  A claimant must show that she could not perform those jobs in order to prove disability.  **Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions of the country.  The ALJ, relying on the VE's testimony, and not the VE, determines whether a specific number of jobs constitutes a significant number.  We have upheld the ALJ's finding that 174 small appliance repairman position in the area in which the claimant resided established the existence of work in significant numbers.**

*Brooks v. Barnhart*, 133 F. App'x 669, 670-71 (11th Cir. 2005) (internal citations omitted) (emphasis added).

In this case, the VE found Plaintiff capable of performing two type of jobs encompassing a total of 1,290 jobs regionally and 177,000 nationally.  Because it is clear that a significant number of call out operators and child attendants exist in the national economy, both jobs that the VE testified Plaintiff able to perform even with the additional reaching limitation, the court finds it unnecessary to discuss the ALJ's decision to include frequent reaching in the RFC.  Even if the ALJ had erred by including frequent reaching in the RFC, such error would be harmless as there are other jobs that exist in significant

numbers in the national economy that Plaintiff could perform, even with only occasional

reaching.

C.      **Whether the ALJ erred by finding Plaintiff did not suffer from a severe mental impairment**

Plaintiff also argues that the ALJ erred by failing to find depression, anxiety, and

schizoaffective disorder to be severe mental impairments.  Pl.'s Br. (Doc. 12) at 10.

> At the second step of the sequential-disability determination, the ALJ must "consider the medical severity of [the claimant's] impairments." *Phillips*, 357 F.3d at 1237 (quoting 20 C.F.R. § 4[16.9]20(a)(4)(ii)).  In doing so, the ALJ must determine whether the impairments, alone or in combination, "significantly limit" the claimant's "physical or mental ability to do basic work skills." *Phillips*, 357 F.3d at 1237 (citing 20 C.F.R. § 4[16.9]20(c)). An impairment should be considered "not severe" only if "it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Bridges v. Bowen*, 815 F.2d 622, 625 (11th Cir. 1987) (citation omitted); *see also McDaniel*, 800 F.2d at 1031 (defining claimant's burden as mild).  However, a diagnosis or a mere showing of "a deviation from purely medical standards of bodily perfection or normality" is insufficient; instead, the claimant must show the effect of the impairment on her ability to work.  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

*Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (footnote omitted).

Here, the ALJ explicitly stated that Plaintiff's medically determinable mental

impairment does not cause more than minimal limitation in her ability to perform basic

mental work activities and is therefore nonsevere.  Tr. 17.  In making such a finding, the

ALJ agreed with Dr. Hope Jackson, Ph.D., that Plaintiff suffered from only mild

restriction in activities of daily living, mild difficulties in social functioning, and mild

difficulties with regard to concentration, persistence or pace, and that Plaintiff has

experienced no episodes of decompensation that have been of extended duration.  *Id.*

The ALJ continued,

> In addition, I note that although there are allegations of limits to
> [Plaintiff]'s activities of daily living due to emotional or mental symptoms,
> [Plaintiff] reports being able to currently work part time, take care of her
> son, attend Bible study, sing in the church choir, clean, drive, handle money
> without issue, crochet, play cards, play dominoes, attend social groups
> regularly and follow written and spoken instructions well.  These activities
> of daily living are not supportive of a finding of disabling mental
> impairment, or even a severe mental impairment.
>
>                                          . . .
>
> Because [Plaintiff]'s medically determinable mental impairment causes no
> more than "mild" limitation in any of the first three functional areas and
> "no" episodes of decompensation which have been of extended duration in
> the fourth area, it is nonsevere . . . .

Tr. 17.  The ALJ fully explained his reasoning for finding Plaintiff's mental impairments

to be nonsevere and did not error by doing so.

Plaintiff also asserts that the ALJ failed to adequately consider the whole record

because "[t]he ALJ never addressed the fact Dr. Jackson found [Plaintiff] had a severe

mental impairment, an 'Affective Disorder' or a mood disorder."  Pl.'s Br. (Doc. 12) at

10.  Plaintiff is incorrect.  Prior to discussing Dr. Jackson's findings, the ALJ directly

noted "Dr. Jackson evaluated [Plaintiff] under 12.04 – Affective Disorders."  Tr. 17.

Similarly, Plaintiff argues that she "has considered herself disabled for many years" and

"has regularly been diagnosed with a mental impairment."  Pl.'s Br. (Doc. 12) at 11.

However, a diagnosis of a mental condition alone does not satisfy the requirements for a

severe impairment.  *McCruter*, 791 F.2d at 1547.  Plaintiff has not alleged, and is unable

to demonstrate, that any mental impairment affects her ability to work.

**D.     Whether the ALJ properly considered the combined impact of Plaintiff's impairments**

Finally, Plaintiff argues "[t]here is no evidence that the ALJ considered [Plaintiff]'s [mental and physical] impairments in combination when formulating his RFC finding."  Pl.'s Br. (Doc. 12) at 14.  Plaintiff is correct that the Social Security Act requires that all impairments, regardless of their severity, be considered in combination. *See* 20 C.F.R. § 416.923 ("we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").

The court disagrees with Plaintiff's assertion that "there is no evidence" that the ALJ did so in this case.  The court notes the ALJ's direct statement, "In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  Tr. 18.  The ALJ discussed that Plaintiff reported problems with anxiety and hearing voices of dead people.  *Id.*  Additionally, the ALJ noted that Plaintiff said she is depressed often, and that she takes medication for depression/anxiety, but does not attend therapy.  *Id.*  The ALJ stated, however, that Plaintiff's own description of her physical and mental impairments alone is not enough to establish that Plaintiff is disabled.  Tr. 21. It is clear that the ALJ did consider Plaintiff's physical and mental impairments, whether nonsevere or severe, throughout the formulation of the RFC.

Similarly, Plaintiff argues that "[t]he ALJ said he considered how [Plaintiff]'s obesity impacted her functioning under Social Security Ruling 02-1p; however, the ALJ

never actually evaluated it." Pl.'s Br. (Doc. 12) at 14. The court finds that statement to also be inaccurate. The ALJ explicitly noted Plaintiff's height and weight, Tr. 20, and mentioned Plaintiff's obesity or weight no less than six times throughout the decision. Tr. 16, 20, 21, 22, 23. The ALJ clearly understood his duty to consider Plaintiff's obesity pursuant to SSR 02-1p. In fact, the ALJ discussed that duty in detail:

> Obesity is an impairment considered in this [c]ase. I have considered the impact of [Plaintiff]'s obesity in exacerbating her problems and functional limitations caused by her other impairments. Although it is no longer a Medical Listing, obesity is considered along with other impairment[s] in assessing limitation of functioning. We are instructed that an assessment should a[ls]o be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. "In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea." Furthermore, the combined effects of obesity with other impairments may be greater than might be expected without obesity[.] For example, someone with obesity and arthritis affecting a weight-bearing join may have more pain and limitation than might be expected from the arthritis alone (Social Security Ruling 02-1p).

Tr. 22. The ALJ then continued to apply that ruling:

> Although obesity is an impairment that has been considered in this case, the composite available medical evidence of record does not reveal that this impairment has otherwise reduced the functional limitations and restrictions, previously set forth at Finding of Fact Number 4. The [RFC] stated herein accommodates [Plaintiff]'s obesity.

*Id.* The ALJ properly considered all of Plaintiff's impairments in combination and no error occurred.

## VI.   CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED.

A separate judgment will issue.

Done this 18th day of November, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE